Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for Appellant Noah Huizar, and I'd like to reserve a few minutes of my time for rebuttal. Mr. Huizar is appealing his conviction for failure to comply with a lawful direction. The first point that I want to turn to is Mr. Huizar's argument that the case must be dismissed because the government destroyed evidence. The government destroyed video evidence of the offense after Mr. Huizar had repeatedly requested the video evidence and after the government had represented to the magistrate that it would produce the video evidence to Huizar. Mr. Huizar contends that the government thereby violated his due process rights to present a complete defense. I want to turn first to the standard for this claim from this Court's case in Zaragoza, where this Court said the government violates the defendant's right to due process if the available evidence first possessed exculpatory value that was apparent before the evidence was destroyed, second, was unavailable by other, comparable evidence was unavailable by other reasonably available means, and third, the government acted in bad faith in failing to preserve the potentially useful evidence. And I want to make the point here that when we're talking about bad faith, the government has argued that to constitute bad faith, you have to have the government actually looking at the evidence, seeing that it's exculpatory and destroying it intentionally to deprive the defendant of a fair trial. And when the government made that argument in Zaragoza, this Court held we disagree. We don't think that that's the standard of bad faith that applies here. In Zaragoza, there was another, also a video case, where the defendant was in a line, said that she was making gestures and trying to make herself obvious, and there was video evidence of that line which was destroyed by the government. The judge below made the point, counsel, that he didn't believe that whatever was shown on the video was even relevant because the conduct that he relied on had occurred all before the video evidence that was destroyed. So how is it in any way material? It's actually material because one of the things that the Zaragoza Court says is it doesn't have to material just to a defense, but it also can be mitigating its sentencing. So there's a lot on this video. It covered the entire encounter, according to a stipulation with the government, between the defendant and the officer. And so there's a lot in there would be material. But the Court did focus on one particular incident in which the officer apparently said, it's time for you to leave, and Mr. Huizar didn't react immediately, stood there and talking, and the officer pushed Mr. Huizar out of the room. The evidence was actually that he was argumentative and continued cussing and doing what he was doing before, not that he just didn't leave. Correct? He kept on arguing or talking. But one of the points I wanted to make is about the officer's credibility because there were a lot of things that the district court looked at in terms of the officer's testimony that makes the officer a problematic witness, that the video put the government on notice that the officer was a problematic witness and that the video would have been potentially exculpatory. So what was on the video? I mean, was the entire encounter on the video? The government stipulated that the entire encounter would have been on the video. And so what would have been your best point or your best argument? Well, I think the evidence, the entire video, we contend, would have been exculpatory. But there are a few events that the district court relied on prior to the specific request and continued conduct that the court relied on. There was some, first of all, the district court looked to the fact that Costello testified that Huizar was pounding his fist on the table. That was something that wasn't in the officer's report. You know that the officer didn't even arrest Mr. Huizar for failure to comply. So he didn't include that in the report. The witness whose table, the government witness whose table was allegedly pounded, that was Kim, said that he didn't remember the pounding. So we've got this pounding that leads up to and is part of the evidence that presumably led Costello to intervene that is disputed. It's not in the report. It's not confirmed by the government's other witness. The second thing that Huizar, that Costello said led him to intervene was that Huizar was asked by management to leave. That's not in Costello's report. And it's also disputed by the government's witness, Kim. So we've got these two things that show that Huizar is not, sorry, Costello is not a reliable government witness.  This is not confirmed by his report, it's not confirmed by the government's other witness, and it's obviously disputed by a client. Is it disputed that he was told it's time to leave? It's not. Well, that's not disputed, correct. That's Costello's testimony, that he told Huizar it's time to leave. But that wasn't disputed, that he told him that. That was not disputed. But Mr. Huizar's position is that he was in the process of leaving. He didn't refuse to leave. He was in the process of leaving, and Mr. Costello just shoved him out the door. And would the video have showed that? Well, I think it would. I mean, it would certainly show if the security guard walks up to the defendant, says something, and the defendant continues gesticulating, you know, according to the security guard, he was argumentative, he was cussing, you would certainly see body language evincing that type of conduct. And instead, we have Mr. Huizar saying he was actually in the process of leaving. He never refused to leave, but the security guard instead took him down and started shoving him towards the door. And so what would the adverse inference look like? Because this was a bench trial. Exactly. So help me understand that. Well, I think that the adverse inference would be that the video would have disproved Costello's testimony, would have, in mature respects, which would lead to the fact that you couldn't rely on him in his testimony about the specific offense that he asked Huizar to leave and that Huizar refused to leave. But that, I mean, we're talking about a bench trial here. That argument was made to the magistrate judge. The magistrate judge understood that that was the argument that was being made, but he rejected it because he said he didn't think it was relevant. So why are we really talking about remanding for an adverse inference? What would the magistrate do if you remanded it for an adverse inference? Well, because I think she didn't credit the fact that the video may have disproved all these other aspects of Costello's testimony. And once you see that Costello is an unreliable witness because he's convicted by all the other evidence and by his own report, then I think it undermines his testimony that he asked Mr. Huizar to leave and Mr. Huizar continued to be unreliable. We're assuming it would have shown that. This isn't something where there's a concession that it's exculpatory. It may or may not have shown that, correct? No. No, you're correct. We don't know what it was shown. Counsel? I'm sorry. Judge Gould, if I could interject a question. I may be mistaken, but I thought your contention first was that the nature of the tape was such that the conviction should be reversed and only secondarily that you argued there should be an adverse inference. That's correct, Your Honor. I mean, I think that it should be reversed because this evidence would have been exculpatory and Mr. Huizar's due process rights were violated because the evidence was destroyed. And I want to make one point about Zaragoza. In Zaragoza, they didn't know what the tape would have shown, but still it was found to be exculpatory because of what it might have shown. Over and over again in the Zaragoza opinions, the Court says the tape may have shown this, it may have shown this, it may have corroborated what the defendant was saying. And that's the same case here. We've got a stronger case in Zaragoza, I think, because first of all, we've got so many default problems with Costello's testimony and we have numerous requests for the video and the government's own promise to produce the video within the time that we know the video existed. Unless there are any further questions. I had a question regarding – I'm sorry. Go ahead, Judge Gould. My question is this also. Do you believe that the statement, it's time to leave, is a directive to leave? No. We argue in the brief that I don't think that's a sufficient order. That's what I thought. I thought you were saying it's not like saying you must leave or leave now. Exactly, Your Honor. And we cite a number of cases in which a lawful order is – officers are saying you understand that you have to leave. If you don't leave, we're going to have to arrest you. They make it clear that it's a directive to leave, not a comment that, you know, it's – So there's an issue – there was an issue in the case whether the directive is adequate to be a specific command or directive from the authorized person to leave. Yes, You're correct, Your Honor. We do make that argument. And then second, as I understood your briefing, you were saying that the intervention physically by the guard took place only a few seconds after the statement, it's time to leave. That's correct, Your Honor. So you really hadn't made clear that he wasn't going to leave. That's correct, Your Honor. That was the testimony of the guard. It was within a few seconds that he started shoving Mr. Hiswar towards the door. Okay. Thank you. Thank you, Your Honor. Thank you. Okay. I'd like to reserve a few seconds of my time. I'll give you a minute or two. Thank you. Thank you. Good morning, and may it please the Court. Carly Palmer on behalf of the United States. Before we begin, I'd like to make two brief points. The first is that this is an unusual case in that the district court has already evaluated the defendant's appeal and issued a reasoned decision regarding why the appeal lacks merit. And the second is that the defendant's briefing frequently mischaracterizes the admitted evidence at trial. It discusses outbursts the defendant made during other witnesses' testimony as if it were sworn testimony or as if those were positions put forth either in writing or in courtroom by the defense counsel. It talks about the impeachment of witnesses that were never cross-examined, and it talks about the contents of declarations that were never admitted into evidence, never subject to cross-examination. It also talks about reports that, again, were never admitted into evidence and were never used to cross-examine witnesses. Let's just focus on what was evidence, though. It seems like based on review of the record at this point, it is troubling, and I guess I'll go with the first line of question that I had, and the video. It doesn't look in your briefs that you really respond to Mr. Huizar's argument about receiving an adverse inference. What would your argument be there? Because I don't think you said it in your response. Certainly. So first I would point to the magistrate judge's finding that even if she were to grant an adverse inference, it wouldn't benefit defendant. I'm not sure I understand how that could be made if you don't know what was on the video and the video captured everything that was there. I think the idea is that the adverse inference wouldn't have anything to corroborate. That's why this would be different than Zaragoza, because there wasn't evidence put forth by the defendant as to the time period in which the magistrate judge found that the defendant first violated the code. And the second point that I think is relevant to the video is it's absolutely less than ideal. It's absolutely problematic that the video wasn't preserved. But the burden on the defendant under Youngblood is much higher than that. And I would point to this Court's recent decision in Robertson in which the Court found that the government's mere failure to obtain evidence as soon as it is put on notice of its potential existence does not compel a bad faith finding. And even in Celia, which is relied on heavily by the defense, where there was an adverse inference granted, there was no finding of bad faith. And the reason for that is that the defendant hadn't met its burden. And that's even in a situation where the Court had issued a preservation order while the video still existed. Counsel, Judge Gould, if I could interject. Absolutely. That Robertson case you mentioned, wasn't that talking about the government's failure to get some other evidence, as opposed to the government's destruction of evidence that the government had represented to the Court would be preserved? So it was the failure to preserve video after it had been, before it was reported over, which is similar here. So here the video was still in the Social Security Administration's possession and it reported over itself after four months. However, the magistrate judge made a finding that there was no bad faith. She made a finding that it was just a lack of communication. She didn't find any evidence that the prosecutor had personally. Counsel, were you the lawyer in that proceeding with MJ? I was not the lawyer in the previous proceedings regarding the appointment of counsel. I was the lawyer during the trial. Okay, so during the trial, this issue of preserving the videotape came up in pretrial proceedings, right? Yes, Your Honor. And so were you there at that time? I was not there when the preservation requests, or when the statements regarding the appointment of counsel and potential requests for video were made. So what does the record say was the specific request and what does the record say was the specific response of the government? During the request for appointment of counsel, the defense attorney who sought to be appointed said that they would potentially be seeking evidence including video. And the prosecutor on the case said that she intended to provide all evidence, including any video evidence. And that was at a time before the evidence reported over it. That was followed up in writing. It was both orally and in writing. Yes, Your Honor. And I believe one of the references, it was, we have it, we'll give it to them. That was both orally and in writing. So I'm just trying to figure out, you know, what do we do when you have that kind of, I think, evidence that could reflect what actually happened here. There was only one witness with respect to Mr. Costello's actions, and that was Mr. Costello, the security guard, Mr. Costello. And I'm just trying to figure out how the video would not have been relevant or perhaps undermined his credibility. And how is that not important, especially if we find, okay, maybe it's not enough for a dismissal but for an adverse inference. Yes, Your Honor, it's not that it's not important. It's that defendant didn't establish that it was materially exculpatory. Defendant presented no evidence and, indeed, no argument that the video would have shown anything relevant to what happened before Officer Costello put his hand on the defendant's shoulder. Well, how about the pounding on the podium or on the desk? I mean, those kind of actions are what escalate to the point where an there were two other incidents that your colleague across the aisle noted. How would that not be relevant? Yes, Your Honor. I believe it would be relevant. I don't think it would be materially exculpatory. And if that is the primary. How is it not materially exculpatory? I'm sorry. I just want to make sure I understand. When the credibility of Costello was the most important thing here. So I think if the defendant's primary argument regarding the exculpatory value of the video is that it would have somehow impeached the credibility of Officer Costello, shown inconsistencies in his statements, then we need to look at the reasonably alternative evidence part of the test. And if that is what the primary purpose of the video would have been, then other great sources of evidence for a defendant would have been the decision to cross-examine the government's witnesses, to ask Mr. Kim about why he didn't remember the pounding of the table, even though he remembered being told to go to China, being told to go back to his own country. I think they could have cross-examined Officer Costello regarding supposed inconsistencies between his testimony and his report. If that is the arguably exculpatory value of the video, then that's the reasonably available evidence. They also could have presented that to the defendant. Counselors, Judge Gould. So, I mean, they could have cross-examined, but that's a discretionary decision by the plaintiff's counsel. And if they were told that the evidence would be available, I'm not sure what the need would necessarily be for the cross-examination that you're urging. I would appreciate your perspective on another principle. Now, this isn't Ninth Circuit law, as far as I know, or Supreme Court law, but there's an ancient Roman maxim that says something like, in cases of doubt, it's best to lean to the side of mercy. That's the substance of it. And my question is, in this case, there's tremendous doubt, precisely because the government destroyed the evidence, even if not in bad faith. But there's doubt about what happened because of the government's conduct, contrary to what the government said to the court it would do. So shouldn't that lean on the side of vacating the conviction of this 70-year-old man? May, Your Honor, but the — Or 80-year-old man, I guess I would say. It may, Your Honor, but the standard in the Ninth Circuit regarding the magistrate judge's finding that there was no bad faith and this was simply a lack of communication, that's owed a clear error review. And, in fact, at the trial, defense counsel said, I'm not going to argue that the government is acting in bad faith. But I'm not suggesting at all the government's acted in bad faith. I'm just saying that the uncertainty here about what happened, the doubt that we might reasonably have about whether the conduct was or wasn't justified, that that uncertainty is created by the government destroying the evidence. I think it's important to note that the video here didn't record sound, and so it may have had limited value in showing the two verbal orders that were issued by the security guard before he placed his hand on Mr. Pizarro's shoulder and began to guide him out. So Mr. Pizarro stood, continued to argue treacherously, continued to curse, continued to make racial epithets after he was asked to leave, after he had already pushed his way through property. But you're saying he was asked to leave. The statement, it's time to leave, isn't the same as you are directed to leave, right? What was Costello's statement that he said? I see my time has expired. May I continue to answer your question? Of course, yes. So there were two statements. The first statement, it's time for leave, needs to be looked at contextually. It's after the defendant had pounded on the table, after the service representative had said, I'm not going to serve you anymore, after the service representative had closed his windows, after Mr. Pizarro had tried to push his way through those windows, so standing in the way of government property, standing in the way of people obtaining services. It's after the service employee called over Officer Costello, who approached in his uniform with his badge. Officer Costello asked if he had his belongings, made sure he had his belongings, then said it's time to leave. Mr. Pizarro refused. Officer Costello then told him he needed to go to the door. Mr. Pizarro refused. Only then, Officer Costello testified, did he place his hand on Mr. Pizarro's shoulder and began to move him towards the door. And he testified that Mr. Pizarro pushed back against him, turned towards him, threatened to hit him. However, the only evidence contradicted by Mr. Pizarro at court was related to what happened after he had already refused to comply with two verbal orders. But it's time for you to leave. That's not, I don't know that that's an order. That's a statement of fact. And so I guess I'm just trying to wonder if this were a police officer working a demonstration or a protest and they arrested someone immediately after saying it's time for you to leave. Would that case be presented? Your office would present that case? I think it would be contextual. Again, I think it would be a matter of the circumstances surrounding. I think here the natural implication of it's time for you to leave and I'm going to ask you to go to the door after Mr. Pizarro had issued profanities, had caused the service employee to become so offended that he closed his window and continued to do that. I don't think the meaning could have been any more clear. So your argument is in the context of the situation, you can't just take the words at face value. You have to consider the context of the situation. And I take it it's also your position that you have to consider his response because if you credit Costello, it was he continued cussing and argumentative so he would have taken it as an order to leave. Is that what your position is? Yes, Your Honor. And part of that is our deference to our law enforcement officers, even security guards, who are charged with protecting people. He may have made the decision that perhaps he was less likely to cause Mr. Huizar to get more irate if he phrased the question a little more politely. And that's a decision that we want law enforcement officers to be able to make when they're trying to assess safety concerns. Well, it was also deference to the findings of the magistrate judge who heard the testimony. Yes, Your Honor. Okay. Thank you. Thank you. I'll give you two minutes. Okay. I just want to briefly respond to some of the comments that the prosecutor made. One of them was a recitation of some of the events about Costello asking if Mr. Huizar had his belongings. And that's more fully discussed in the briefs. But that, too, we say that there are internal inconsistencies and disputes as to what exactly happened with respect to Costello's testimony. Also, the comment that the video did not record sound. I think that a lot of what we're talking about is physical contact. Even the obstreperous and the cussing and everything, that would have been recorded in body language that would show up on the video had it occurred. So you heard that context here is really what the prosecutor is emphasizing. So why shouldn't we look at the context, especially in light of the magistrate judge's findings? Well, that's part of what I've been arguing, because the context is based on what Costello said in large part. And Costello's testimony, we're arguing, even though as it precedes and postdates the few seconds of the offense, is disputed, both in Costello's own report and by the government's other witness. So I think that to the extent that you're relying on Costello's testimony for what preceded the offense, that's unreliable. And the video would have helped us to say what exactly happened during that offense. When the video was requested, what was the prosecution told about its relevance? Mr. Huizar first asked for it on the day of the offense. He asked the Social Security company for it. At that point, I think he said he wanted to file suit because there had been excessive force used against him. And that was after this command to leave. That would have been after all of that happened. That was after he had been arrested. Was anything else? I mean, that was what the government was told the first time. As to the excessive force claim, was something said different later? That was in November. On the date of the offense, that's what he said. In January, he said he asked the prosecutor for it at the first appearance before he was appointed counsel. And at that point, he said that he hadn't resisted, and so he wanted the video to show that he had not resisted the officer. And I think he also, again, reiterated the excessive force that had been used by the officer. And then the defense just argued in their position papers we're going to request all evidence, including videotapes, and the government promised to produce videotapes. So unless there are any further questions. Thank you. Thank you. Judge Gould, did you have any further questions? No, no further questions here. Thank you. Thank you. Ms. Palmer and Ms. Young, thank you very much for your oral arguments here this morning. The case of United States of America v. Noah Huizar is now submitted.
judges: Gould, Murguia, Amon